**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Bernard DeSilva,

      Plaintiff,

  v.                          Case No. 1:09cv683

State Medical Board of Ohio, *et al.*,        Judge Michael R. Barrett

      Defendants.

## OPINION & ORDER

This matter is before the Court upon Defendants Motion to Dismiss.  (Doc. 5.)
Plaintiff filed a Response in Opposition (Doc. 6) and Defendants filed a Reply (Doc. 9).

## I.    BACKGROUND

Plaintiff Bernard DeSilva is licensed in psychiatry and forensic psychiatry in the
State of Ohio.  Defendants are the State Medical Board of Ohio ("Board"), Cheryl D.
Pokorny, and Dr. Lance Talmage.  Defendant Pokorny is the Enforcement Attorney for the
Board.  Talmage serves as Secretary for the Board.  Plaintiff has also named as
Defendants unknown members of the State Medical Board.

Plaintiff brings claims for violations of 42 U.S.C. § 1983, Ohio Revised Code §
4731.22(F)(1), Ohio Revised Code § 4731.22(G), and Ohio Revised Code § 4731.98.

According to the Complaint (Doc. 1), the events which form the basis of Plaintiff's
claims began in November of 2005, when a local pharmacist called Plaintiff with an issue
regarding a prescription Plaintiff had written for a patient.  The pharmacist threatened to
complain to the Ohio State Board of Pharmacy.  Throughout 2005 and 2006, Plaintiff

received other calls from pharmacy employees which were disruptive and made burdensome requests.  Plaintiff informed the Board that it should monitor these calls.

In 2006, the Board requested the original records for a list of patients.  Plaintiff complied with the request.  Plaintiff contacted these patients, and the patients informed him that they had no complaints concerning the quality of his medical care.  In a letter which appears to be dated October 17, 2006, Plaintiff states that he made two attempts to notify the Board that his recommendations regarding the patient's illness and degree of disability needed to be altered.

On January 19, 2007, Talmage sent Plaintiff a letter requesting that Plaintiff meet with a Quality Intervention Panel "because the Supervising Member and I have identified some aspects of your practice which cause us concern that you may have departed from, or failed to conform to, minimal standards of care of similar practitioners in the same or similar circumstances, in possible violation of Section 4731.22(B)(6), Ohio Revised Code." (Doc. 1, Ex. B.)  The letter provided further:

> The members of the Quality Intervention Panel have reviewed and discussed the patient records of the patients identified on the attached patient key and [have] concerns regarding your prescribing practices.  Please come prepared for a case discussion regarding your care and treatment of these patients and your current prescribing practices.

(Id.)  The letter included a date, time, and location for the meeting.  (Id.)  The Complaint does not explain whether this meeting took place, and what the outcome of the investigation was.

Between January and March of 2007, Defendants sent an investigator, Mark Demeropolis, to Plaintiff's office.  Demeropolis did not have a warrant, but asked for information about a patient.  On February 20, 2007, Defendants sent several investigators

to Plaintiff's office. These investigators did have a warrant, and sought patient records. On March 16, 2007, Plaintiff informed Defendants that Demeropolis had been indicted on six charges of tampering with records, tampering with evidence and forgery. Plaintiff requested that Demeropolis' investigation be reviewed for fraud, acts of bad faith or breach of confidentiality.

In 2008, DeSilva testified on behalf of Dr. Leo D'Souza in an administrative hearing. In retaliation, on May 28, 2009, Defendant Talmage served a subpoena duces tecum on Plaintiff's office. The subpoena instructs Plaintiff to produce the complete original patient records for the patients identified in the attached patient key. (Doc. 1, Ex. F.) On June 12, 2009, counsel for Plaintiff wrote a letter to Pokorny requesting that Defendants return the patient records Plaintiff provided as part of the 2007 investigation. (Doc. 1, Ex. D.) Porkorny responded by letter dated July 1, 2009. (Doc. 1, Ex. E.) The letter states that Pokorny is returning two original patient records, but the Board is not in possession of any additional records. (Id.) Plaintiff claims Defendants lost these records.

In the Complaint, Plaintiff alleges that Defendants have damaged his career and reputation. Plaintiff alleges further that if the disciplinary action taken against him is made public, his insurance will be cancelled or become prohibitively expensive; he will lose his livelihood; his patients will be without a physician; and he will suffer pain and mental anguish. In addition to the alleged violations of Ohio law, Plaintiff alleges the following constitutional violations: (1) violation of Fourth Amendment right to be free from unreasonable searches and seizures; (2) violation of Fifth Amendment right to due process; and (3) violation of Fifth Amendment right to be secure from self-incrimination. Plaintiff seeks an award of damages, reasonable attorney fees and other costs, and a

preliminary or permanent injunction ordering Defendants to cease their investigation of Plaintiff.

## II.  ANALYSIS

### A.  Standard of Review

Defendants challenge the Complaint for both a lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).

A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).  Defendants' motion is based upon Eleventh Amendment immunity, and is therefore a facial attack.  *See Sims v. University of Cincinnati*, 46 F.Supp.2d 736, 737 (S.D.Ohio 1999) (subject matter jurisdiction challenge under the Eleventh Amendment constitutes a facial attack).  Defendants also argue that Plaintiff's claims should be dismissed based on lack of ripeness.  Because Defendants do not dispute the facts underlying the ripeness of the Complaint, they present a facial challenge.

In reviewing a motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008), *quoting Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  "[T]o survive a motion to dismiss a complaint must contain (1)

'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.' " *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).  Although the plausibility standard is not equivalent to a " 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 1949, *quoting Twombly*, 550 U.S. at 556.

### B.    Sovereign immunity

The Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States."  The Sixth Circuit has not "spoken with one voice on whether [a court] must, or whether [a court] may, resolve a sovereign-immunity defense before addressing the merits."  *Nair v. Oakland County Community Mental Health Authority*, 443 F .3d 469, 474 (6th Cir. 2006).  Because Defendants have raised sovereign immunity as a threshold issue, the Court will address the sovereign-immunity defense before addressing the merits.  *See id.* at 476 ("If it is true that sovereign immunity may be waived and if it is true that just one party (the State) may waive the defense, the State would seem to be free to express whatever preference it wishes about whether the defense is a threshold issue or one that arises only if the sovereign would otherwise lose on the merits.").

Plaintiffs brings claims against the Board.  The Eleventh Amendment applies to

state agencies as well as the state. *Hall v. Medical College of Ohio*, 742 F.2d 299 (6th Cir. 1984). The Sixth Circuit has found that as an agency of the state, the Board is entitled to Eleventh Amendment immunity. *See Begun v. Ohio State Medical Bd.*, 1989 WL 34047, *1 (6th Cir. March 29, 1989) (unpublished) (affirming district court's dismissal of section 1983 claim against the Board based on lack of jurisdiction due to the Board's eleventh amendment immunity).

Plaintiff also brings claims against Pokorny and Talmage. Plaintiff does not specifically allege in the Complaint that he is bringing claims against Pokorny and Talmage in their individual capacities, but there are allegations of actions taken by these two Defendants as individuals. In addition, Defendants have raised the affirmative defense of qualified immunity in their motion to dismiss. Therefore, the Court will read the Complaint as bringing claims against Pokorny and Talmage in both their individual and official capacities. *Accord Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (explaining that while it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her "individual capacity," failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice).

A suit against a state official in his or her official capacity is no different from a suit against the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, to the extent that Plaintiff seeks monetary damages from Pokorny and Talmage in their official capacity, these claims are barred by the Eleventh Amendment. *Thiokol Corp. v. Department of Treasury, State of Mich.*, 987 F.2d 376, 381 (6th Cir. 1993).

However, sovereign immunity does not apply when a plaintiff seeks declaratory or

injunctive relief against a public official that is "'properly characterized as prospective.'" *Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 616 (6th Cir. 2003), *quoting Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002); *see also Edelman*, 415 U.S. at 664-65 (explaining Eleventh Amendment does not bar injunctive relief which is a prospective mandate to conform to some standard rather than retroactive compensation for past injuries). Therefore, Plaintiff is not barred from seeking injunctive relief from Pokorny and Talmage in their official capacity, if that relief can properly be characterized as prospective.

Plaintiff seeks an injunction ordering Defendants to cease their investigation of Plaintiff. This type of future relief for ongoing or threatened violations of federal law is not barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 737 (6th Cir. 1994).

In addition, the Eleventh Amendment does not preclude suits against state officials in their individual capacities for damages. *Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. 2006); *see also Hafer v. Melo*, 502 U.S. 21, 27 (1991) (holding that state officials, sued in their individual capacities, are "persons" within the meaning of § 1983 and that the Eleventh Amendment did not bar suits against such persons). As the Sixth Circuit has explained:

> A claim for damages against individual defendants seeking to impose individual liability for action taken under color of state law is not prohibited. Only if the purpose of a lawsuit is to coerce a state action by the official sued and to impose liability which "*must* be paid from public funds" does the eleventh amendment apply.

*Wilson v. Beebe*, 770 F.2d 578, 588 (6th Cir. 1985) (emphasis in original), *quoting Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *see also Alden v. Maine*, 527 U.S. 706, 756

(1999) ("Even a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally."). Based on the allegations in the Complaint, the Court finds that Plaintiff's claim for damages is not barred because the claims brought against Pokorny and Talmage in their individual capacities is based upon wrongful conduct fairly attributable to Defendants.

Based on the foregoing, Plaintiff's claims against the Board are barred by the Eleventh Amendment. However, Plaintiff's claims against Pokorny and Talmage are not barred by the Eleventh Amendment to the extent that Plaintiff seeks prospective injunctive relief or money damages from Pokorny and Talmage in their individual capacities.

## C. <u>Ripeness</u>

A court lacks jurisdiction over the subject matter if the claim is not yet ripe for judicial review. *Bigelow v. Michigan Dep't of Natural Res.,* 970 F.2d 154, 160 (6th Cir. 1992). Ripeness is one of several principles of justiciability predicated on both "Article III limitations" and "prudential reasons for refusing to exercise jurisdiction." *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006). The question of ripeness arises in those cases "'anchored in future events that may not occur as anticipated, or at all.'" *Id., quoting Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 294 (1997). Federal courts must refrain from premature adjudication of agency action to avoid "entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt

in a concrete way by the challenging parties." *Abbott Lab. v. Gardner*, 387 U.S. 136, 148 (1967).

Defendants argue that Plaintiff's claims are not ripe because the investigation is ongoing and no charges have been brought against him. To a certain extent, Defendants' characterization of Plaintiff's claims is accurate. In part, Plaintiff seeks to enjoin any future investigation. "The ripeness inquiry arises most clearly when litigants seek to enjoin the enforcement of statutes, regulations, or policies that have not yet been enforced against them." *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003). The Sixth Circuit has explained:

> In determining whether a pre-enforcement challenge is ripe, three considerations must be weighed. The first two deal with the "fitness of the issues for judicial determination." One aspect of the "judicial fitness of the issues" is the extent to which the legal analysis would benefit from having a concrete factual context. The second aspect of the "judicial fitness of the issues" is the extent to which the enforcement authority's legal position is subject to change before enforcement. The third consideration deals with the "hardship to the parties of withholding court consideration."

*Id.*, *citing Abbott Labs.*, 387 U.S. at 148-49.

As to the "fitness of the issues for judicial determination," the Sixth Circuit has explained that:

> Concerns about the premature resolution of legal disputes have particular resonance in the context of Fourth Amendment disputes. In determining the "reasonableness" of searches under the Fourth Amendment and the legitimacy of citizens' expectations of privacy, courts typically look at the "totality of the circumstances," reaching case-by-case determinations that turn on the concrete, not the general, and offering incremental, not sweeping, pronouncements of law. Courts thus generally review such challenges in two discrete, post-enforcement settings: (1) a motion to suppress in a criminal case or (2) a damages claim under § 1983 or under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against the officers who conducted the search. In both settings, the reviewing court looks at the claim

in the context of an actual, not a hypothetical, search and in the context of a developed factual record of the reasons for and the nature of the search.

*Warshak v. U.S.*, 532 F.3d 521, 528 (6th Cir. 2008) (citations omitted).

Based on the foregoing, the Court finds that Plaintiff's claim that Defendants be enjoined from committing future violations of his Fourth Amendment right to be free from unreasonable searches and seizures is not ripe. To the extent that Plaintiff seeks prospective relief based upon his Fifth Amendment protection against self-incrimination, that claim is also not ripe. *See Connection Distributing Co. v. Holder*, 557 F.3d 321, 343 (6th Cir. 2009).

However, Plaintiff also claims that Defendants have violated his Fourth and Fifth Amendment rights based upon past actions. The Court finds that these claims are ripe for review because there is a concrete factual context.

### D.    <u>Abstention</u>

Defendants argue that even if Plaintiff's claims are ripe, Plaintiff's claims should be dismissed based upon both the *Younger* and *Buford* abstention doctrines. *See Younger v. Harris*, 401 U.S. 37 (1971), and *Burford v. Sun Oil*, 319 U.S. 315 (1943).

*Younger* abstention is not a question of jurisdiction, but is rather based on "strong policies counseling against the exercise of such jurisdiction." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986). Under the *Younger* abstention doctrine, absent extraordinary circumstances, a federal court must decline to interfere with pending state civil or criminal judicial proceedings involving important state interests. *See Younger*, 401 U.S. at 44; *see also Ohio Civil Rights Comm'n*, 477 U.S. at 627 (extending *Younger* abstention to state administrative proceedings). Three requirements must be met

before a district court properly invokes *Younger* abstention: "1) there must be on-going state judicial proceedings; 2) those proceedings must implicate important state interests; and 3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *American Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 332 (6th Cir. 2007), *citing Squire v. Coughlan*, 469 F.3d 551, 555 (6th Cir. 2006) (quotation marks and citation omitted).

While the parties have not raised the issue, the Court has doubts as to whether there are "on-going" state judicial proceedings. According to the Complaint, Defendants have only sought records in conjunction with a series of investigations. The January 19, 2007 letter from the Board requests records as part of a review by the Quality Intervention Panel. The cover letter for the May 28, 2009 subpoena states that the Board is investigating "a confidential complaint." However, based on the record before the Court no charges have been filed against Plaintiff and no administrative proceedings have commenced.

In *Kalniz v. Ohio State Dental Bd.*, the plaintiff, a dentist licensed to practice in Ohio, challenged the Ohio Dental Board's seizure of business and patient records without a subpoena or court order. 2010 WL 1172587, *1 (S.D.Ohio Mar. 29, 2010) (slip op.). The defendants argued that this Court should abstain from exercising jurisdiction based upon *O'Neill v. Coughlan*, 511 F.3d 638, 643-44 (6th Cir. 2008). Specifically, the defendants argued that an administrative proceeding is ongoing when it is in the investigation phase. In *O'Neill*, the Sixth Circuit held that because the Ohio Supreme Court has held that the filing and investigation of a grievance against an attorney is part of a judicial proceeding,

an administrative proceeding had begun for the purposes of *Younger* when a grievance had been filed against a judge. *Id.*[1] However, this Court distinguished *O'Neill*, because the Sixth Circuit specifically limited its finding to a situation in which a grievance against a judge or an attorney had been filed. 2010 WL 1172587, *5. Ultimately, this Court in *Kalniz* did not need to reach the question whether the Dental Board's investigation constituted an ongoing judicial proceeding because prior to this Court engaging in any proceedings of substance, an official disciplinary proceeding was instituted against the plaintiff. *Id.*

In contrast, in this case, a confidential complaint has been filed against Plaintiff and an investigation of that complaint has commenced, but Plaintiff has not been notified of any hearing or other disciplinary proceeding.[2] Therefore, the Court finds that there are no "ongoing" judicial proceedings, and *Younger* abstention is not applicable.

The Court also finds that *Buford* abstention is not applicable. *Buford* abstention is

---

[1]The Sixth Circuit relied upon the Ohio Supreme Court decision in *Hecht v. Levin*, 613 N.E.2d 585, (Ohio 1993). There the Ohio Supreme Court explained that:

> Section 2(B)(1)(g), Article IV of the Ohio Constitution grants to this court original jurisdiction in the discipline of attorneys in Ohio. Pursuant to this responsibility, this court created Gov.Bar R. V to govern the disciplinary procedure for members of the bar. As a result, "[i]t is now well established that * * * all matters relating to the discipline and reinstatement of attorneys at law are inherently judicial in nature and are exclusively under the control of the judicial branch of the government." *In re Nevius* (1963), 174 Ohio St. 560, 562, 23 O.O.2d 239, 240, 191 N.E.2d 166, 169.

613 N.E.2d at 588. In contrast, the discipline of physicians is not under the jurisdiction of the Ohio Supreme Court, and therefore disciplinary proceedings are not "inherently judicial in nature."

[2]The Board also sought records for review by the Quality Intervention Panel, but the Court notes that pursuant to the statute which provides for such a panel, the quality intervention program is "designed to improve through remedial education the clinical and communication skills" of physicians. *See* Ohio Rev. Code § 4731.22(O). Therefore, this is not a disciplinary proceeding.

applied where there exist "'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'" or where the federal case "'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989), *quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976). Plaintiff is not challenging a state policy or a difficult question of state law. Instead, Plaintiff's challenge is based upon constitution violations which allegedly occurred during Defendants' investigation. In making these claims, Plaintiff is not seeking any determination regarding state law. *See American Elec. Power Co., Inc. v. Kentucky Public Service Com'n*, 1986 WL 16708, *2 (6th Cir. Mar. 24, 1986) (unpublished) ("Burford operates only to prevent federal determination of state law."). Accordingly, the Court will proceed to the merits of Plaintiff's claims.

> **D.    Section 1983**

Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Tuttle v. Oklahoma City*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001), *citing Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) and *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992).

Defendants do not dispute the existence of state action. Instead, Defendants argue that Plaintiff has failed to state a claim for a deprivation of constitutional rights. Defendants argue further that to the extent that Plaintiff's claims against the individual defendants are cognizable, Pokorny and Talmage are entitled to qualified immunity. Because the only federal claims which remain are those against Pokorny and Talmage and the unidentified individuals, the Court addresses that argument now.

**E.      Qualified immunity**

The doctrine of qualified immunity protects government officials performing discretionary functions from individual liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *citing Procunier v. Navarette*, 434 U.S. 555, 565 (1978). While the defendant bears the burden of pleading the defense of qualified immunity, the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Miller v. Administrative Office of Courts*, 448 F.3d 887, 894 (6th Cir. 2006), *citing Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

The Supreme Court, in *Saucier v. Katz*, set forth a two-pronged test to determine whether a defendant is entitled to qualified immunity. First, a court must consider whether the facts of the case, viewed in the light most favorable to the plaintiff, show the officer's conduct violated a statutory or constitutional right. 533 U.S. 194, 201 (2001). If so, the court must then decide "whether the right was clearly established." *Id.* Although *Saucier* mandated that these questions be addressed in order, that requirement has since been

relaxed.  *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").

In this instance, the Court finds that it is appropriate to first address whether Defendants' alleged conduct violated a statutory right.

### 1.    Fourth Amendment

The Fourth Amendment provides that "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."  U.S. Const. Amend. IV.  As the Sixth Circuit has explained:

> The Fourth Amendment's shield extends over government actions which intrude upon a person's "reasonable . . . expectation of privacy."  Because a criminal investigation is viewed as among the most intrusive actions a government may take against an individual, the Fourth Amendment accordingly offers a particularly strong shield against such investigations. Although the Fourth Amendment also provides some protection against administrative or regulatory searches, such investigations are generally less intrusive than one which could potentially lead to criminal sanctions, and are accordingly more likely to be tolerated under the Fourth Amendment.

*Jacob v. Township of West Bloomfield*, 531 F.3d 385, 389-90 (6th Cir. 2008) (citations omitted); *see also Donovan v. Dewey*, 452 U.S. 594, 598-599 (1981) (explaining that the greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home).  Plaintiff has challenged Defendants' warrantless searches and the subpoena issued on May 28, 2009.

Under the Fourth Amendment, searches "conducted without a warrant issued upon probable cause [are] per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *U.S. v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008), *quoting Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

Such an exception to the warrant requirement has developed for "pervasively regulated business[es]," *United States v. Biswell*, 406 U.S. 311, 316 (1972), and for "'closely regulated' industries . . . long subject to close supervision and inspection." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978), *quoting Colonnade Catering Corp. v. United States*, 397 U.S. 72, 74 (1970) (upholding statute authorizing warrantless searches of liquor licensee's premises by Internal Revenue agents); *see also United States v. Biswell*, 406 U.S. 311 (1972) (holding that federal Treasury agents could search premises of a licensed gun dealer to determine whether he was in compliance with the Gun Control Act).

A pervasively regulated business is one which has "such a history of government oversight that no reasonable expectation of privacy could exist." *Marshall*, 436 U.S. at 313. "[T]he doctrine is essentially defined by 'the pervasiveness and regularity of the . . . regulation' and the effect of such regulation upon an owner's expectation of privacy." *New York v. Burger*, 482 U.S. 691, 701 (1987), *quoting Donovan*, 452 U.S. at 606. No court has spoken as to whether in Ohio the practice of medicine is a pervasively regulated business. However, the Ohio Supreme Court has held that a physician can not rely on the physician-patient privilege to prevent the Board from compelling production of patient records pursuant to Ohio Revised Code § 4731.22(C)(1). *State Medical Bd. of Ohio v. Miller*, 541

N.E.2d 602, 606 (Ohio 1989). The court explained: "in the interest of the public at large, served here through the board's investigation of possible wrongdoing by a licensed physician, outweighs the interests to be served by invocation of the physician-patient privilege." *Id.* Based on the foregoing, the Court concludes that a physician has no reasonable expectation of privacy in patient records.

In addition, Ohio requires that each person who practices medicine in the state to apply for and take an examination to determine his or her competence to practice medicine. *See* Ohio Rev. Code § 4731.13. If an individual passes the examination, the Board issues a certificate stating that the person is authorized to practice medicine. *See* Ohio Rev. Code § 4731.14. This certificate to practice can be revoked by the Board for numerous reasons which are enumerated in Ohio Revised Code § 4731.22(B). The Board is given the authority to "investigate evidence that appears to show that a person has violated any provision of this Chapter or any rule adopted under it." Ohio Rev. Code § 4731.22(F)(1). Therefore, a physician is aware that he or she is subject to investigation by the Board. The Court concludes that based on the foregoing that the practice of medicine in Ohio is a pervasively regulated business.

A warrantless search of a pervasively regulated business is reasonable only if the regulatory regime meets three criteria. *Burger*, 482 U.S. at 702-703. First, "there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." *Id.* at 703 (citations omitted). Second, the inspection program must "be 'necessary to further [the] regulatory scheme.'" *Id.*, *quoting Donovan*, 452 U.S. at 600. Third, "the statute's inspection program, in terms of the certainty and regularity of

its application, [must] provid[e] a constitutionally adequate substitute for a warrant." *Id.*, *quoting Donovan*, 452 U.S. at 603. Plaintiff argues that the second and third criteria have not been met.

The regulatory scheme pursuant to which the investigations of Plaintiff were made is Ohio Revised Code § 4731.22(F). The Court finds under the second criteria, the inspection program is necessary to further the regulatory scheme because the Board must "investigate evidence that appears to show that a person has violated any provision of this chapter or any rule adopted under it." Ohio Rev. Code § 4731.22(F). Without the investigatory program in place, the Board would have no means to investigate possible violations of the Chapter.

To meet the third criteria, "the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers" by limiting the "time, place, and scope" of the search. *Burger*, 482 U.S. at 703. Ohio Revised Code § 4731.22(F)(3) provides:

> In investigating a possible violation of this chapter or any rule adopted under this chapter, the board may administer oaths, order the taking of depositions, issue subpoenas, and compel the attendance of witnesses and production of books, accounts, papers, records, documents, and testimony, except that a subpoena for patient record information shall not be issued without consultation with the attorney general's office and approval of the secretary and supervising member of the board. Before issuance of a subpoena for patient record information, the secretary and supervising member shall determine whether there is probable cause to believe that the complaint filed alleges a violation of this chapter or any rule adopted under it and that the records sought are relevant to the alleged violation and material to the investigation. The subpoena may apply only to records that cover a reasonable period of time surrounding the alleged violation.

Plaintiff does not contend that this language in the statute does not satisfy the third criteria

under *Burger*. Instead, Plaintiff challenges the subpoena issued on May 28, 2009 as being too broad in terms of time, place, and scope.

With regards to administrative subpoenas, the Supreme Court has explained that:

It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. The agency has the right to conduct all reasonable inspections of such documents which are contemplated by statute, but it must delimit the confines of a search by designating the needed documents in a formal subpoena.

*See v. City of Seattle*, 387 U.S. 541, 544-545 (1967). The Court finds that the May 28, 2009 subpoena clearly meets these limitations. The subpoena states that Plaintiff is "to appear in the offices of the State Medical Board of Ohio, in the city of Columbus, County of Franklin, State of Ohio, on June 18, 2009 at 11:00 o'clock A.M. then and there to produce and deliver documents to the State Medical Board of Ohio." Therefore, the subpoena was limited by time and place. The documents are described as "the complete, original patient records for the patients identified on the attached Patient Key." Therefore, there was a specific list of patients which limited the scope of the subpoena. The Court finds that Plaintiff is unable to state a claim that this subpoena failed to meet the requirements of the Fourth Amendment.

Another exception to the warrant requirement is consent. *Moon*, 513 F.3d at 537. If an officer obtains consent to search, a warrantless search does not offend the Constitution. *Id.*, citing *Davis v. United States*, 328 U.S. 582, 593-94, (1946). "Indeed, '[a]n officer with consent needs neither a warrant nor probable cause to conduct a constitutional search.'" *Id.*, quoting *United States v. Jenkins*, 92 F.3d 430, 436 (6th Cir. 1996).

According to the Complaint, Plaintiff voluntarily complied with all of Defendants' written requests for records and voluntarily permitted Demeropolis and other inspectors to conduct their investigation of Plaintiff's office. The Court finds that this consent obviates the need for a warrant or a finding of probable cause.

Because Plaintiff has not established a Fourth Amendment violation under the first prong of *Saucier* analysis, the Court finds it unnecessary to reach the second prong. Accordingly, Pokorny and Talmage are entitled to qualified immunity and the Court grants Defendants' Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 claim for a violation of his Fourth Amendment rights.

## 2. <u>Fifth Amendment</u>

The Fifth Amendment, in relevant part, provides "[n]o person shall ... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." Plaintiff claims Defendants, as agents of the State of Ohio, violated his Fifth Amendment right to due process. However, the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government. *Scott v. Clay County, Tenn.*, 205 F.3d 867, 873 n. 8 (6th Cir. 2000) ("The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government."). Therefore, Plaintiff cannot state a claim for a violation of his due process under the Fifth Amendment.

Plaintiff also claims a violation of his Fifth Amendment right to be secure from self-incrimination. However, as the Supreme Court has explained: "Although our cases have permitted the Fifth Amendment's self-incrimination privilege to be asserted in noncriminal

cases, . . . that does not alter our conclusion that a violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." *Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (citations omitted). Moreover, "Failure to assert the privilege will often forfeit the right to exclude the evidence in a subsequent 'criminal case.' " *Id.*, at 771, *citing Garner v. United States*, 424 U.S. 648, 650 (1976) (failure to claim privilege against self-incrimination before disclosing incriminating information on tax returns forfeited the right to exclude that information in a criminal prosecution). Because Plaintiff has not alleged that he ever asserted the privilege, or was compelled to be a witness against himself in a criminal case, Plaintiff cannot state a claim for a violation of the Fifth Amendment.

Because Plaintiff has not established a Fifth Amendment violation under the first prong of *Saucier* analysis, the Court finds it unnecessary to reach the second prong. Accordingly, Pokorny and Talmage are entitled to qualified immunity the Court grants Defendants' Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 claim for a violation of his Fifth Amendment rights.

### F.    State law claims

Plaintiff brings claims for violations of Ohio Revised Code § 4731.22(F)(1), Ohio Revised Code § 4731.22(G), and Ohio Revised Code § 4731.98. Because these alleged violations are pursuant to state law, they are not cognizable under section 42 U.S.C. § 1983.

The sections of Chapter 4731 cited by Plaintiff in the Complaint do not provide for a civil right of action. Sections 4731.22(F)(1) and 4731.22(G) pertain to disciplinary

procedures applicable to the practice of medicine. Section 4731.98 pertains to the immunities of the Board. Therefore, Plaintiff cannot state a claim pursuant to these sections of the Ohio Revised Code. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's state law claims.

## III.  CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Defendants' Motion to Dismiss (Doc. 5.) is **GRANTED**. This matter is dismissed in its entirety and should be terminated from the docket of this Court.

**IT IS SO ORDERED.**

_____/s/ Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court